UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 1:07-cr-9 |
| | ) | Collier/Lee |
| | ) | |
| LUCAS LORENZO BROWN | ) | |

## REPORT AND RECOMMENDATION

**I.     Introduction**

Defendant Lucas Lorenzo Brown filed a motion to suppress evidence obtained as a result of a traffic stop on July 7, 2006 [Doc. No. 13]. Defendant challenged law enforcement's search and seizure claiming: (1) there was no probable cause for the traffic stop because he committed no traffic infractions, (2) there was no probable cause for his arrest, and (3) due to the alleged lack of probable cause, all evidence should be suppressed [*id.*]. The motion has been referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) [Doc. No. 14]. For the reasons stated herein, it is **RECOMMENDED** Defendant's motion to suppress be **DENIED**.

**II.     Relevant Facts**

An evidentiary hearing on the Defendant's motion to suppress was held on April 3, 2007. The government offered the testimony of Officer Michael S. Keef of the Chattanooga Police Department. The Defendant presented no witnesses.

Officer Keef testified he observed the Defendant sitting in a vehicle at a stop sign on the corner of East 38th Street and Dorris Street in the Alton Park area of Chattanooga on July 7, 2006 at approximately 3:40 a.m. This intersection is near "Club Lean" and is considered a high crime

area. Officer Keef stated several recent shootings and other suspected gang activities had taken place near the club.

Officer Keef noticed Defendant's vehicle sitting at the stop sign. Officer Keef could hear loud music coming from Defendant's vehicle from a distance of 500 feet. He testified the loud music was from Defendant's vehicle, not from "Club Lean" or the cars of patrons leaving the club.

After driving past the intersection where Defendant was stopped, the officer pulled to the side of the road near another parked patrol car. He observed Defendant make a left-hand turn and proceed south in the center turning lane of E. 38th Street. Defendant continued in the turn lane for approximately 300 feet. Officer Keef began to follow Defendant's vehicle.

Officer Keef activated his blue lights and siren, but Defendant continued in the turn lane another 50 feet before turning onto Fagan Street. The officer in the other patrol car followed behind Officer Keef, and the second patrol car's blue lights and siren were also activated. Defendant continued to travel down Fagan Street at a speed of 40 mph in a 25 mph zone for approximately three to four city blocks before he rapidly pulled two-car lengths into the driveway of what turned out to be Defendant's mother's residence. Officer Keef stated there were several places where Defendant could have stopped his car in response to the activation of the blue lights and sirens prior to the driveway where Defendant did stop.

The Defendant jumped out of his vehicle, and Officer Keef believes Defendant was attempting to flee on foot, but immediately stopped because the officers had him "covered." Defendant failed to follow Officer Keef's instructions to come back to the patrol car, and Officer Keef approached Defendant and "quickly" placed Defendant in custody. Officer Keef testified Defendant was arrested for "felony fleeing" and because Officer Keef believed Defendant was an

"immediate threat" due to his failure to stop his car for several blocks in response to the blue lights and sirens.

After Defendant was placed in custody, Officer Keef pulled up Defendant's pants, which were sagging, and when he did so, Officer Keef observed a holster clipped to Defendant's pants. A search of Defendant's person revealed an empty gun holster and $965 in his front pants pocket. Officer Keef then searched Defendant's vehicle where he found a loaded .380 pistol, two "cookies" of crack cocaine, and a set of digital scales, all located in the front seat center console/armrest of Defendant's vehicle. The pistol fit the custom-tailored holster Defendant was wearing.

Officer Keef also requested a "check" on Defendant. Questions during the hearing did not elicit exactly when Officer Keef learned there were outstanding arrest warrants for Defendant, but it is clear he did learn of the outstanding arrest warrants prior to transporting the Defendant to the jail. While in transit to the jail, Defendant volunteered to Officer Keef, without any questioning by Officer Keef, that he removed the gun from its holster and he "ran" because he knew he had outstanding arrest warrants.

### III. Analysis

A defendant may challenge the admission of illegally obtained evidence only if the defendant's own constitutional rights have been violated. *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). "Fourth Amendment rights are personal rights [and] may not be vicariously asserted." *United States v. Myers*, 102 F.3d 227, 231 (6th Cir. 1996), *cert. denied*, 520 U.S. 1223 (1997) (quoting *Rakas*, 439 U.S. at 134). It is well established a driver such as Defendant may challenge the validity of a vehicle stop under the Fourth Amendment, *see United States v. Carter*, 14 F.3d 1150, 1154 (6th Cir.), *cert. denied*, 513 U.S. 853 (1994), and the government does not dispute

Defendant's ability to challenge the validity of the stop in this matter. If the initial traffic stop was unlawful, then the "fruit of the poisonous tree" doctrine might require exclusion of any evidence discovered during an ensuing search. *Carter*, 14 F.3d at 1154.

**A.** *The Vehicle Stop*

*1. Applicable Standards*

Stopping a vehicle and detaining its occupants is considered a seizure for purposes of the Fourth Amendment. *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000). As recently noted by the Sixth Circuit, "[c]aselaw in this circuit is in conflict as to whether an officer must possess 'probable cause' as opposed to only 'reasonable suspicion' in believing that a traffic violation has occurred before stopping the vehicle in question." *United States v. Westmoreland*, No. 06-3549, 2007 WL 930262, * 3 (March 29, 2007) (citing *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007) (noting a discrepancy between applying the probable cause and reasonable belief standards to traffic-violation stops)). Because both parties argue in terms of probable cause, I will assume, without deciding, the more stringent probable cause standard applies.

It is settled law the decision to stop an automobile is reasonable where the police have probable cause to believe a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996). The police may lawfully detain a vehicle and conduct a brief stop of its occupants where there is probable cause to believe a traffic violation has occurred, even if the traffic offense is minor and the officer had additional subjective reasons for making the stop. *Id.* at 810, 813; *United States v. Herbin*, 343 F.3d 807, 809 (6th Cir. 2003).

A traffic stop is subject to the constitutional requirement that it not be "unreasonable" under the totality of the circumstances. *Whren*, 517 U.S. at 810, 812-13. Thus, in determining whether

4

an automobile stop based on probable cause to believe a traffic violation has occurred is constitutional, the court must conduct a fact specific inquiry that turns upon whether probable cause existed to justify the traffic stop based upon the totality of the circumstances. Although the proponent of a motion to suppress generally bears the burden of demonstrating his or her Fourth Amendment rights were violated by a challenged seizure or search, *Rakas*, 439 U.S. at 130 n.1, it is the government's burden to demonstrate a particular seizure was based on probable cause. *United States v. Baldwin*, 114 F. App'x 675, 681 (6th Cir. 2004).

In a recent traffic stop case, the Sixth Circuit held "[t]he relevant inquiry is whether the police officer possessed probable cause or reasonable suspicion to believe that a traffic violation occurred, not whether a traffic violation in fact occurred." *Sanford*, 476 F.3d at 396. "Probable cause is generally defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Copeland*, 321 F.3d 582, 592 (6th Cir. 2003) (citation and quotation marks omitted). The doctrine of probable cause represents "a flexible, commonsense standard that requires that the facts available to the officer would warrant a man of reasonable caution" in the belief that a violation has occurred. *Id.* (quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc), *cert. denied*, 513 U.S. 828 (1994)) (brackets omitted).

### 2. *Offenses at Issue*

Under the applicable Tennessee ordinances concerning excessive noise from motor vehicles:

> (a) No person operating or occupying a motor vehicle on any public street, highway, alley, parking lot, or driveway shall operate or permit the operation of any sound amplification system including, but not limited to, any radio, tape player, compact disc player, loud speaker, or any other electrical device used for the amplification of sound from within the motor vehicle so that the sound is plainly audible at

5

> a distance of fifty (50) or more feet from the vehicle. For the purpose of this section, "plainly audible" means any sound that clearly can be heard, by unimpaired auditory senses based on a direct line of sight of fifty feet (50') or more; however, words or phrases need not be discernible and such sound shall include bass reverberation.

Tenn. Code Ann. § 55-8-193.

Tennessee law provides the driver of a vehicle intending to turn at an intersection "[w]here a special lane for making left turns by drivers proceeding in opposite directions has been established:...shall not enter a left turn lane more than a safe distance from the point of the intended turn." Tenn. Code Ann. § 55-8-140(5)(D). Tennessee law also makes it an offense to fail to operate a motor vehicle on the right side of the road except under certain circumstances not at issue here. Tenn. Code Ann. § 55-8-115. In addition, Tenn. Code Ann. § 55-8-132 makes it an offense to fail to stop for a police vehicle properly and lawfully making use of an audible signal.

### 3. *Application*

The first issue for determination is whether probable cause existed to justify the stop of Defendant's vehicle. Applying the above stated factual findings to the traffic ordinances at issue, I conclude Officer Keef witnessed Defendant's violation of several traffic ordinances, including ordinances prohibiting excessively loud music, improper use of a turn lane, speeding, and failure to stop in response to the activation of police blue lights and sirens.

Defendant presented no evidence to suggest he did not commit the traffic offenses at issue. Instead, Defendant argued during the hearing he was the victim of a "profile stop" because he was a black male in a high crime area in a late model car on the night at issue. While Defendant's argument suggests he believes the stop was pretextual, under applicable Sixth Circuit precedents, an officer's subjective motivation for stopping a vehicle is irrelevant if the officer has probable cause

6

to believe a traffic violation has occurred.  *See, e.g., Id.; United States v. Townsend*, 305 F.2d 537, 541 (6th Cir. 2002) (an officer may conduct a traffic stop for any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct); *United States v. Garrido*, 467 F. 3d 971, 977 (6th Cir. 2006) (same).

Officer Keef, who testified consistently and credibly, clearly had probable cause to stop Defendant based on violations of Tenn. Code Ann. §§ 55-8-193, 55-8-140(5)(D), 55-8-115 and/or 55-8-132.  Accordingly, I find the traffic stop was proper.

B.  *The Arrest*

The second issue for determination here is whether probable cause existed to arrest Defendant at the time he was arrested.  Defendant argued the evidence should be suppressed because Officer Keef violated his Fourth Amendment rights when he arrested him without probable cause, which led to the discovery of the gun and drugs in his vehicle.  The Defendant's argument fails because a warrantless arrest is lawful if the an officer has probable cause to believe the suspect either is, has, or is about to commit a crime. *See United States v. Johnson,* 171 F. App'x 499, 501 (6th Cir. 2006) (citing *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990)).  As held in *Johnson*, this is true even if the crime is minor.  *Id.* (citing *United States v. Ferguson*, 8 F.3d at 392 (6th Cir. 1993) (misdemeanor violation sufficient probable cause for arrest)).

Probable cause exists where an officer "has reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion" based upon "the totality of the circumstances from the officer's perspective." *Ferguson*, 8 F.3d at 392.  The test for probable case is wholly objective; thus, the subjective belief of the arresting officer is irrelevant to determining whether probable cause existed.  *United States v. Anderson*, 923 F. 2d 450, 456-57 (6th Cir. 1991).

7

I conclude Officer Keef had probable cause to arrest Defendant for violations of Tenn. Code Ann. §§ 55-8-193, 55-8-140(5)(D), 55-8-115 and/or 55-8-132 as set forth above. A violation of § 55-8-193 is a Class C misdemeanor and a violation of § 55-8-132 is a Class B misdemeanor. §§ 55-8-193(c) & 55-8-132(e). Defendant offered no evidence to rebut Officer Keef's testimony supporting this finding. Thus, I conclude the arrest of Defendant was lawful.

### C. *The Search*

The next issue raised for determination is whether the search of Defendant's vehicle was lawful. The government argued the search was lawful because it was incident to a lawful arrest and, even if it was not lawful as a search incident to arrest, then the evidence would be admissible under the inevitable discovery doctrine.

One of the well established exceptions to the warrant requirements of the Fourth Amendment is the search incident to arrest. *See e.g.*, *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979); *Chimel v. California*, 395 U.S. 752, 762-63 (1969). "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *United States v. Byrd*, No. 94-5301, 1995 WL 72299, * 5 (6th Cir. Feb. 21, 1995) (quoting *New York v. Belton*, 453 U.S. 454, 460 (1981)). Such a search may be made without a warrant or probable cause. *Id.* (quoting *United States v. Thomas*, 11 F.3d 620, 628 (6th Cir. 1993), *cert. denied*, 511 U.S. 1043 (1994)).

Pursuant to *Belton*, the Sixth Circuit has adopted a rule defining the passenger compartment of a vehicle as all spaces reachable without exiting the vehicle, excluding areas that would require dismantling the vehicle. *United States v. White*, 131 F. App'x 54, 57 (6th Cir. Mar. 3, 2005), *cert. denied*, __ U.S. __, 126 S. Ct. 109 (2005) (quoting *United States v. Pino*, 855 F.2d 357, 364 (6th Cir.

8

1988)). The center console where the evidence at issue was located was clearly within the passenger compartment of the vehicle as it was reachable without exiting the vehicle.

Having concluded Defendant was properly arrested, I further conclude Officer Keef properly searched Defendant's vehicle, including the armrest/console where the evidence was located, as a lawful search incident to arrest. Thus, it is not necessary to address the government's remaining argument concerning inevitable discovery based upon the pending arrest warrants. While my recommendation is based upon my conclusion there was a lawful search incident to arrest, I also find Officer Keef had a reasonable suspicion criminal activity was afoot justifying a frisk of Defendant and subsequent search of his vehicle under *Terry v. Ohio*, 392 U.S. 1 (1968) and *Michigan v. Long*, 463 U.S. 1032, 1049 (1983) and their progeny.

**D.**     *Defendant's Statement*

The final issue arguably raised for determination is whether "all statements" by Defendant after his arrest should be suppressed. The only such statements addressed during the hearing were the statements by Defendant that he "ran" because of his outstanding arrest warrants and he removed the gun from its holster. No evidence was presented to refute Officer Keef's testimony these statements were volunteered by Defendant without any interrogation by law enforcement.

While it appears Defendant was not advised of his *Miranda* rights prior to making the statements, as the Supreme Court explained in *Rhode Island v. Innis*, "*Miranda* safeguards come into play whenever a person in custody is subjected either to express questioning or its functional equivalent. . . . [T]he definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." 446 U.S. 291, 301-02 (1980). Based upon the evidence, I conclude Defendant's

9

statements were not the result of any "interrogation" by Officer Keef, and thus there was no violation of the *Miranda* warning requirement that would justify suppression.

IV.    **Conclusion**

For the reasons stated herein, it is **RECOMMENDED**[1] Defendant's motion to suppress [Doc. No. 13] be **DENIED**.

                                                          s/*Susan K. Lee*
                                                          SUSAN K. LEE
                                                          UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).